Good morning. May it please the Court, Christina Hellman for Petitioner Billy Hatch. Your Honors, at a trial with constitutionally effective counsel, there is more than a reasonable probability that Mr. Hatch would have been acquitted. But unfortunately, he did not have that. What he had was a trial counsel who committed a series of errors. The two most egregious were his failure to completely investigate the case pre-trial, resulting in a defense that was false, and his failure to use cross-examination for its constitutionally mandated purpose, to test the reliability of the State's evidence. This failure in cross-examination resulted in the jury never hearing significant evidence that the victim in this case had been coached by her mother. Even though the claim of failure to investigate is unfortunately defaulted, and therefore only available through a showing of actual innocence, the facts surrounding that claim are critically important to assess all of the non-defaulted, ineffective claims, because we know from the Supreme Court that investigation is the most important thing that an attorney can do. Without investigation, there can be no strategy. Without strategy, counsel's decisions and actions at trial are owed no deference at this point. So, the first thing I would like to do is talk about . . . Well, you say it's defaulted. Therefore . . . Therefore, you, Federal Court, cannot consider . . . Aren't we pretty well restricted? You are restricted. However, Mr. Hatch has put forth evidence of his actual innocence to pass through the Schlupp Gateway. The Schlupp Gateway, right? Yes. Yes, it's a Schlupp claim. And that's based on the polygraph? That is based on the polygraph. Yes, Your Honor. And the . . . how are you using the polygraph? Are you suggesting that it should be . . . that it itself is affirmative evidence of innocence, or that the mention of it without letting him have a chance to put in evidence that he actually took the polygraph? Which is . . . which is . . . The . . . it's . . . Because there was a reference in Cross to the prosecution. Yes, and that is . . . that is a separate, also . . . No, that's a separate claim. Your argument . . . The polygraph . . . yes, the fact that he passed the state's administered polygraph . . . Proves he . . . proves . . . would have proved to the jury, beyond . . . that he wasn't . . . that he wasn't guilty of the offense. At least it would have bolstered his credibility that no reasonable juror would have found him guilty. Correct. We believe that he should have been able to introduce the fact that he agreed to take the polygraph, which would have been admissible in Oregon. But when you consider the past polygraph in conjunction with all of the other evidence, as you do in a Schlepp inquiry, there is . . . no reasonable juror would have looked at all of that evidence and then found him guilty of what happened. In the competency hearing before trial, the child, who was four years old, was questioned at length by the judge about whether she could meet the test of competency, whether she could accurately perceive and talk about events. What she . . . the judge asked her was if anybody had told her what to say here. And this is at Excerpt of Record 25. And she said, uh-huh, yeah, Mom has. And the judge asked, what did she tell you? And the child said, she told me not to say about their part. At which point the mother interrupts and says, no, I told her to tell the truth. At trial, counsel asks the child, did you talk to your mother about this event? And this is at Excerpt 63. And she says, no, earlier I did, though, a couple days ago. But I don't remember, and I don't think so. At that point, counsel has a duty to bring out evidence that would show that this child has been coached. Well, now you cross-examined witnesses, I know. And what's the guarantee that the child is going to give evidence, answers that are going to prove that she'd been coached? Not at trial, but at that point when she has opened the door under, um, So you're saying that the competency hearing. I'm saying that the statement from the competency hearing should have been introduced as a prior inconsistent statement to show when she's telling you now that she didn't talk to her mother, she's not really sure, you know that she has talked to her mother and that her mother has told her not to say something about their part in the story. And later on at trial, additional evidence did come out that when she's, they're talking about whether she called for her mother or not at Excerpt 61 to 62, the child says, she always says I called, but I don't, I didn't. Okay, so I just want to make sure I understand where the ineffectiveness was here. The ineffectiveness was at the preliminary competency voir dire portion where there was the statement by the girl and then the interjection by the mother. And that was of record, and what you're saying is that then in, before the jury, then there was the opportunity to not ask the girl on the stand, but to then confront her or impeach her, if you will. It's kind of hard to think of it with a child, but use the prior testimony, not risk a uncontrolled, unexpected answer from the child without benefit of that. Is that correct? Correct. The ineffectiveness was at trial for not using the statement that he had to come out. There's other evidence in the record that shows that the child really had difficulty relating events and understanding time and being able to accurately give a story. And counsel did not, once he, he simply moved on and asked her at that point whether she was talking to her mother now. Would it have been possible for counsel simply to offer that as evidence, the prior statement? Yes, under Oregon Evidence Rule 801, a prior inconsistent statement may come in as substantive evidence. There's no specific state court fact-finding on this claim. There is a conclusion of law that counsel did a, quote, fairly effective job, and that's at 181. But because there's no actual fact-finding and no analysis, this court performs an independent review of the record, and under that independent review, it's obvious that trial counsel's performance was objectively unreasonable in this case. He also, if this court finds that we have, the polygraph allows you to pass through the gateway, the claim of failure to investigate is the key claim in this case because trial counsel's defense that he put on turned out to be false. He set the case up as a revenge motive, and then it turns out during the trial that the revenge motive was not even true, remotely true, because the two people who were supposedly involved in the revenge motive testified that they had never met each other, did not know who each other was, had never heard about the prior charges that were the subject of the revenge motive. In closing argument, the prosecutor uses that very skillfully to say, you've heard two stories, one is false, ours is obviously true. If there are no further questions, I would like to reserve. You may do so, counsel. Thank you. We'll hear from the State. May it please the Court, Carolyn Alexander for Respondent Robert Lampert. Because counsel spent a fair number of minutes on the cross-examination claim, I'd like to start with that and then say a few things about the actual innocence claim, which I think is crucial, certainly to the failure to investigate claim. Counsel here today suggests that trial counsel's error was not admitting the child's statements in the competency hearing as prior inconsistent statements. That argument has never been raised. It's not in the blue brief. It's not in the reply brief. That's the first time that the State has ever heard that argument and has had absolutely no chance to respond to that. In fact, in the opening brief and in the reply brief as well, the petitioner has never said exactly what counsel should have done in that situation. The trial court held two competency hearings, found that the child, in fact, was competent, examined the child on the issue of those, for lack of a better term, inconsistent statements. As the district court found, those statements were vague as to suggestiveness. But the child was examined. Trial counsel did ask the child questions, asked the child about coaching. At trial, counsel did the same thing, asked the child about coaching. The child didn't waver from her statement that it was petitioner that abused her and was very specific in the ways that he abused her. And petitioner doesn't suggest what more counsel could have done than what he did at the time. So even if you assume, for sake of argument, that counsel should have done more in cross-examining the child, petitioner hasn't shown prejudice. He hasn't shown, had counsel done this, it would have proven to the jury that this child was coached by her mother. All this record shows is that the mother told the child to tell the truth, as did the prosecutor. There's no other suggestion that this mother was out to frame petitioner in any way. And so she took that revenge motive and, because of that, coached the child to make up these fabricated allegations. There's just nothing else. Well, there is the interrupted statement by the child that she quoted, which is where the mother then interjected and said, no, I told her to tell the truth. That, in and of itself, sort of raises a flag, doesn't it? It does, Your Honor, and that's what the district court noted was vague about suggestiveness. But again, that was in the competency hearing, and the trial court found the child competent. Well, I know it did, but it seems to me if there was non-speculative, if one wanted to not speculate about whether he should or should not have done something, that was an opportunity that one could focus on because that interjection seemed totally inappropriate for the mother to interject without any objection or effort by defense counsel to challenge that. Well, again, assuming that's true, petitioner still has to show what counsel should have done or could have done at that moment. Object. Say counsel had a – say counsel had a – Challenge competency. But again, he's got to put on some evidence that this child was actually coached by the mother, that in fact there was something more than the mother's simply telling the child to tell the truth. That's what the prosecutor did. But there is something more. She said simply to tell the truth is what the mother said she did. The child said, no, she told me not to talk about that part, which is a very ambiguous reference, but it doesn't say she didn't tell me to tell the whole truth. Correct. I think this is a case where this claim has to be looked at in the big picture. Petitioner's claim theory, I guess is a better way to put it, is that he's innocent of these charges and that April Eggner, the child's mother, had some motive to frame him or that he was framed by somebody, that somebody set him up. And that coaching claim comes in the context of his theory. So again, to prove prejudice, he's got to show that there's some evidence that his theory is true, that this child had been coached, that there was somebody out to frame him on these charges, and that all of the other evidence, all of the other witnesses, the child's testimony, Jesse Selby's testimony, that he saw Petitioner take the child up to the room, was sitting on the bed, saw him flee from the scene when the child and the mother yelled, all of that evidence somehow goes away. But this is a case where that totality of the evidence has to be looked at in viewing each of these individual claims. If you look at the individual claims as individual claims, I don't think that gives you the big picture of what this case is about. I'd like to make a couple of comments about the actual innocence claim. Again, as counsel concedes, the failure to investigate claim is procedurally defaulted. Petitioner has asserted that he's actually innocent so that this court can hear those claims. District court rejected his claims of actual innocence based on the polygraph. Again, this is evidence that he passed a second polygraph. Again, putting aside all the issues of admissibility and reliability, he still has to show, and this is another way to frame Schlupp's standard, that every reasonable juror would have acquitted him in light of this new evidence.  Well, I think it's in light of the new evidence and also excluding any unconstitutional evidence which might then require us to decide the IAC claim, right? Exactly. Exactly, Your Honor. And so admissibility does come into play there. In that prong of the standard, admissibility does have to be weighed. But even that aside, this was evidence that he passed a second polygraph. The other evidence showed that the first polygraph was a non-pass. It was inconclusive. Then petitioner went on to say, I've taken many polygraphs before. I don't think they're accurate. So it's certainly possible that one juror, and that's all that's needed to defeat the claim under Schlupp, one juror would have found that that pass of the second polygraph was due to practice effects. Now, in the reply brief, he also relies on the affidavits of Justin Russell and Silas Wildon to say that was also evidence of actual innocence. All they said was, we believe petitioner's innocent. That's not evidence. That's a belief. And that certainly didn't overcome the totality of the other evidence and the witnesses who actually testified at trial. Was there also one of them said something about being approached by the— One of them also said something about he believed April Egner had approached him, or April Egner had approached him and wanted him to testify for her or something to that effect, which, again, feeds into that whole defense theory of I was framed. However, both petitioner's father and grandmother testified at trial. She's trying to frame him. So that's not new evidence. That piece of that affidavit is not new evidence. That was presented at trial. And so it couldn't possibly meet its burden under Schlupp. There's other things I could say, but if the Court has questions about any of the other claims or the other issues— If there are no questions, Counsel. Okay. Thank you. Ms. Hellman, you have some reserved time. Thank you, Your Honor. Two points that I'd like to make. First, the Schlupp standard is not that all jurors would think one way or the other. It's framed as, from House v. Bell, the Supreme Court's decision, 126, Supreme Court, 2064, at page 2077. More likely than not that any reasonable juror would have reasonable doubt. Yeah, you only need one juror. You only need one juror. Hang it up and quit. Yeah, that's true, Your Honor. Then I would like to also address this— I agree with my opponent that we have to look at this case in its entirety. I think that usually in ineffective assistance cases, you're looking at the one thing that went wrong in the sea of what went right. Here, to find that what the State Court's decision to find that it was not objectively unreasonable, you'd have to find the one thing that went right in this case, and it's not here. The idea, though, that the motive— to allow you to consider the polygraph— this motive to frame is counsel's theory that self-destructed at trial. We don't stand behind the idea that these women were conspiring against him. Could I ask one question? Yes, Your Honor. If a lawyer fails to respond or react properly on the polygraph question, in the face of Oregon law that the polygraph is irrelevant or can't be used to prove innocence, why is that lawyer's performance, sorry as it is throughout the case, why is that filing strictly standard? In terms of the polygraph, his performance at trial with the polygraph was attempting to introduce that the client had agreed to take the polygraph. He didn't try and ask for the polygraph results to be introduced. He was given a chance to ask for a mistrial at that point. He absolutely was, Your Honor, and we think that he was completely ineffective for failing to do so based on what had already happened. Why did that client violate the strictly standard? The mistrial? Because this is the evidence that was at trial. I'm out of time. May I answer your question? You may finish. Thank you. This is what had happened. The trial defense had self-destructed. April Eggner had testified she did not know this other woman. He had failed to get this key evidence about coaching in front of the jury. Then the state's witness had said, we offered him a polygraph. The trial court refused to allow him to introduce the evidence that would rebut this negative presumption. And then the court twice offers him to move for a mistrial, and he says no. Thank you, counsel. Thank you. The case just argued will be submitted for decision, and we will now hear argument in Wild West Institute v. Bull.
judges: Goodwin, O'scannlain, Fisher